UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WALID ELSADY,

    Plaintiff,

-vs-

RAPID GLOBAL BUSINESS SOLUTIONS,
 INC., a Domestic Profit Corporation, and
CARCO GROUP, INC., a Foreign Profit
Corporation, jointly and severally,

    Defendants.
_____/

Case No. 09-11659
Hon: AVERN COHN

# MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CARCO'S MOTION FOR SUMMARY JUDGMENT

## I. Introduction

This is a Fair Credit Reporting Act (FCRA) case under 15 U.S.C. § 1681 et seq. Plaintiff Walid Elsady (Elsady) secured an offer of employment from nonparty SAIC, Inc. (SAIC) which was contingent upon employment and education screening. SAIC retained defendant CARCO Group, Inc. (CARCO) to conduct the background screening. Defendant Rapid Global Business Solutions, Inc. (RGBSI), a former employer, was contacted by CARCO. RGBSI erroneously reported to CARCO that Elsady had been terminated for performance reasons; this information was relayed to SAIC. After receiving the information, SAIC rescinded Elsady's employment offer. Elsady claims that RGBSI and CARCO violated the FCRA as well as state law by providing and failing to correct the erroneous employment information. His complaint is in four counts:

>   (I)   Business Defamation as to RGBSI and CARCO,
>
>   (II)  Libelous Defamation as to RGBSI and CARCO,
>
>   (III) Willful Violation of 15 U.S.C. § 1681s as to RGBSI and CARCO, and
>
>   (IV)  Negligent Violation of 15 U.S.C. § 1681s as to RGBSI and CARCO

Now before the Court is CARCO's motion for summary judgment.[1] CARCO asserts that it did not violate the FCRA because it accurately reported information received from a facially credible source and corrected the errors after reinvestigation. It further asserts that Elsady is not entitled to relief on his defamation claims because they are preempted by the FCRA and because CARCO's statements were privileged. For the reasons that follow, CARCO's motion will be granted as to Count IV and denied as to Counts I, II, and III.

## II. Facts

On February 25, 2008 RGBSI offered Elsady employment as a manufacture control engineer. He completed his first assignment in a satisfactory manner on June 26, 2008. On August 8, 2008 he was laid off. His termination was not performance related and he was eligible for rehire.

On November 7, 2008 SAIC offered Elsady employment as an electrical engineer. The offer was contingent on the outcome of a background screening of his education and employment history. SAIC retained CARCO to perform the background screening and provided it with Elsady's education and employment history. SAIC also

---

[1] RGBSI's motion to dismiss is also before the Court. Due to the different procedural postures of the motions and the different standards of review, the Court addresses these motions in separate orders.

provided CARCO with a list of criteria for evaluating the results of the background screening and required CARCO to report an "adverse" outcome if there was a discrepancy between the employer and employee's reasons for separation, the employee was terminated, or the employee was ineligible for rehire.

On November 27, 2008 CARCO contacted RGBSI to verify Elsady's employment history. CARCO sent RGBSI a release form and information form via fax. RGBSI returned the completed information form which was signed and dated by Jennifer Emory. The information form incorrectly stated that Elsady was terminated due to job performance and was not eligible for rehire. CARCO reported this inaccurate information to SAIC along with an "adverse" finding. As a result, SAIC determined that Elsady had falsified his employment records and rescinded his employment offer.

After learning that SAIC had received inaccurate information about his employment with RGBSI, Elsady contacted RGBSI directly on November 20, 2008 and informed it that the information provided to CARCO was incorrect. He demanded that RGBSI immediately retract and correct the information provided to CARCO and also contact SAIC directly to correct the error.

RGBSI acknowledged its error and sent a corrected information form to CARCO stating that Elsady had been laid off. Because Elsady's file was already closed, CARCO took no further action. RGBSI also contacted SAIC directly and informed it that Elsady had not been discharged for performance related reasons.

Elsady also asserts that he contacted CARCO directly in November to inform it of the error. However, Elsady's deposition is inconclusive. He stated that he contacted CARCO in November 2008, but when pressed by CARCO's attorney he said that he

3

could not recall whether it was in November or December. In addition, CARCO stated in a letter that "reinvestigation [of Elsady's report] has been conducted as of November 19, 2008, within five days of notification that you were disputing information that CARCO reported to SAIC." CARCO asserts that this letter contained a typographical error and was referring to notice and investigation that took place in January 2009.

After SAIC received corrected information from RGBSI, it failed to reinstate Elsady's offer for employment. Although SAIC had received corrected information regarding Elsady's employment history with RGBSI, SAIC's hiring manager stated in an e-mail on December 2, 2008, "I am not hiring Walid after reviewing all the available information: he does not have any [Department of Defense] experience; his resume reflects a lot of job hopping over 15 years, the circumstances upon which he left a previous employment are suspect."

On December 3, 2008 Elsady contacted CARCO by mail and requested that it correct his employment information.[2] CARCO received Elsady's letter on December 12, 2008. Upon receipt of the letter, CARCO notified RGBSI of the dispute and received confirmation that Elsady had been laid off and was not discharged for performance reasons. On December 15, 2008 CARCO provided SAIC with an amended report. The report contained the following correction:

> RGBSI – Information for the above company was inadvertently released as adverse due to the subject's ineligibility for rehire. Jennifer Emory, Human Resources Assistant, verified the subject was employed from March 10, 2008 to June 26, 2008 as an engineer. . . . Source further

---

[2]The exact date on which Elsady sent notice to CARCO is disputed. However the parties agree that CARCO did not receive the notice until December 12, 2008.

4

> stated reason for leaving was laid off, however was unable
> to verify the reason. Per company policy, no further
> information is available. The employment is now clear.

However, the amended report also contained the information from the initial report, including the original incorrect information form submitted by RGBSI and CARCO's finding that Elsady's employment status was adverse. RGBSI's corrected information form was not included.

On January 21, 2009 Elsady sent another letter to CARCO disputing the contents of the report. On January 27, 2009 CARCO again received confirmation from RGBSI that Elsady had been laid off. It sent another amended report to SAIC on February 10, 2009. This report listed Elsady's employment status as clear and included an amended report from RGBSI which also stated that Elsady was laid off.

### III. Standard of Review

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most

5

favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV.  The FCRA

### A. The Law

#### 1. Introduction

The FCRA is intended to regulate the field of consumer reporting and protect individuals who are the subject of such reports.  The statute was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C. § 1681(b).  The FCRA regulates three primary groups: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies.[3]  E.g., Ruggerio v. Kavlich, 411 F. Supp.2d 734, 736 (N.D. Ohio 2005).  Under the act, a "consumer reporting agency may furnish a consumer report" to "a person which it has reason to believe – intends to use the information for employment purposes."  15 U.S.C. § 1681b(a)(3)(b).

#### 2. Accuracy of Consumer Reports

"Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  While

---

[3] The parties agree that CARCO is a consumer reporting agency, SAIC is a user of consumer reports, and RGBSI is a furnisher for purposes of the FCRA.

6

a consumer reporting agency must strive for maximum possible accuracy, it is only required to incorporate reasonable procedures. Spence v. TRW, Inc., 92 F.3d 380, 383 (6th Cir. 1996) ("[15 U.S.C. § 1681e(b)] does not impose strict liability for inaccurate entries in consumer reports; the preparer is held only to a duty of reasonable care. The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances." (citations omitted)). This standard is further clarified in 16 C.F.R. 600 app. § 607:

> If a consumer reporting agency accurately transcribes, stores, and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§ 1681e(b)] simply by reporting an item of information that turns out to be inaccurate.

In other words, a consumer reporting agency receiving a facially credible report from a source which it believes to be reputable is not liable merely because the report contains inaccurate information.

However, a consumer reporting agency is not automatically shielded from liability if it accurately reports the information that it receives. Bryant v. TRW, Inc., 689 F.2d 72, 78 (6th Cir. 1982). In Bryant, the plaintiff had a troubled credit history and had contacted the defendant on several occasions to dispute information contained in its credit reports. Id. at 74-75. The defendant was subsequently hired to conduct a credit report related to the plaintiff's mortgage application. Id at 75. Prior to issuing a formal report, the defendant notified the mortgage company that the credit report would contain four items of derogatory information. Id. The plaintiff immediately contacted the credit agency and disputed these items. Id. However, the defendant issued an unchanged

7

credit report two days later.  Id.  Given the prior history between the parties and the plaintiff's specific disputes regarding the information, the Sixth Circuit held that the defendant could have easily informed the creditors of the plaintiff's dispute and asked them to reinvestigate the derogatory items that had been posted.  Id. at 79.  Thus there are circumstances where a credit reporting agency has sufficient prior notice of a dispute that it cannot merely accept at face value the information that is reported to it.

### 3. Duty to Investigate and Correct Errors

When a consumer disputes information included in a report issued by a consumer reporting agency and notifies the agency of the dispute, the agency:

> shall, free of charge, conduct a reasonable investigation to
> determine whether the disputed information is inaccurate
> and record the current status of the disputed information, or
> delete the item from the file in accordance with paragraph 5,
> before the end of the 30 day period beginning on the date on
> which the agency receives notice of the dispute from the
> consumer.

15 U.S.C. § 1681i(a)(1)(A).  If the consumer reporting agency finds that disputed information is inaccurate or incomplete it shall "promptly delete that item of information from the file of the consumer, or modify that item based on the results of the reinvestigation."  Id. § 1681i(a)(5).  Thus a credit reporting agency has 30 days to investigate and correct inaccurate information after it receives notice from a consumer and cannot be found liable for failing to complete a reinvestigation more rapidly.  See Roberts v. Trans Union LLC, No. 05-74224, 2007 WL 1308682, at *8 (E.D. Mich. May 3, 2007).

8

### 4. Civil Liability for Noncompliance with the FCRA

A consumer reporting agency is subject to civil liability if it violates the FCRA. If the noncompliance is willful, a consumer reporting agency is liable for any actual damages, or in the absence of actual damages for statutory damages. 15 U.S.C. § 1681n(a)(1)(A); Ramirez v. Midwest Airlines, Inc., 537 F. Supp. 2d 1161, 1168 (D. Kan. 2008) ("In light of the fact that the word 'actual' damages is notably absent from the statutory damages provision, it is clear that a showing of actual damages is not required to recovery statutory damages."). A plaintiff who establishes a willful violation can also recover punitive damages, costs, and attorneys fees. Id. 1861n(a)(1)(B)-©. "To show willful noncompliance with the FCRA, the plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." Roberts, 2007 WL 1308682, at *4 (citing Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1999)).

If the noncompliance is merely negligent, a consumer reporting agency is only liable if the plaintiff can prove actual damages. 15 U.S.C. § 1681o(a)(1) ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable in an amount equal to the sum of – (1) actual damages sustained by the consumer as a result of the failure."). Unlike the provision for willful noncompliance, a plaintiff alleging negligent noncompliance cannot rely on statutory damages as an alternative to actual damages.

## B. Analysis

### 1. 15 U.S.C. § 1681e(b)

CARCO asserts that it is entitled to summary judgment with respect to any alleged violation of 15 U.S.C. § 1681e(b) in its initial report because it accurately reported the information provided by RGBSI and had no reason to suspect that the information was incorrect. Elsady asserts that CARCO failed to follow reasonable procedures because it could have easily contacted RGBSI and corrected the inaccurate information after receiving notice of the dispute.

CARCO is correct; there is no evidence suggesting that it had reason to doubt the accuracy of RGBSI's information <u>prior</u> to submitting the report to SAIC. Elsady's reliance on <u>Bryant</u> is misplaced because CARCO did not receive notice of Elsady's dispute until after it submitted its initial report to SAIC. While Elsady's subsequent dispute may have triggered a duty to reinvestigate under § 1681i, it is not relevant to CARCO's investigative procedures under § 1681e(b). Elsady has produced no evidence suggesting that CARCO had reason to doubt that RGBSI was reputable or that the information RGBSI provided was credible. As a result, there is nothing to suggest that CARCO's initial investigation was deficient in any way.

### 2. 15 U.S.C. § 1681i

#### a.

CARCO asserts that it is entitled to summary judgment with respect to its duty to reinvestigate Elsady's employment status because it provided SAIC with an amended report within 30 days as required by statute. Elsady disputes both the timing and

10

content of the amended report.

Elsady asserts that CARCO's duty to reinvestigate arose on November 20, 2008 when he says he first contacted CARCO to dispute the report. CARCO claims it was not notified by Elsady until December 12, 2008. The Court need not resolve this dispute because CARCO issued an amended report on December 15, 2008 – within 30 days of the initial notification under either parties version of the facts. See Roberts, 2007 WL 1308682, at *8. Even if notice was provided on November 20, 2008, CARCO's December 15, 2008 response was still timely. Moreover, Elsady cannot rely on CARCO's failure to correct the inaccurate report prior to December 15, 2008 as a basis for liability. Liability under § 1681i is not triggered until 30 days after a consumer reporting agency is notified of a dispute. Id.

Elsady also asserts that CARCO failed to properly correct his employment information because the amended report continued classify his employment with RGBSI as "adverse" and included the original inaccurate information form submitted by RGBSI. CARCO claims that its amended report corrected any problem because it added a corrective note that Elsady had been laid off and stated that his employment status was clear. 15 U.S.C. § 1681i(a)(5) requires credit reporting agencies to delete inaccurate information or modify it as appropriate. Credit reporting agencies are further required to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted." Id.

**b.**

Viewing the facts in a light most favorable to Elsady as the non-moving party, a

jury could reasonably find that the December 15, 2008 amended report failed to comply with § 1681i.  At best, the amended report is confusing.  While it states that Elsady's employment status is clear, it also states that his employment status is adverse.  Moreover, the amended report shows that the original inaccurate form provided by RGBSI was neither deleted nor modified.  Rather than submitting the corrected form provided by RGBSI, CARCO again submitted the original inaccurate form which stated that Elsady was discharged for performance reasons.  CARCO was fully aware that Elsady was laid off and that his employment status was clear.  Yet it issued an amended report that could reasonably be interpreted to state that his employment status remained adverse.  Under these circumstances, the Court cannot conclude as a matter of law that CARCO complied with the FCRA with respect to its duty to reinvestigate.

### 3. Willful Noncompliance

CARCO asserts that it cannot be liable for willful noncompliance because it has fully complied with its requirements under the FCRA.  However, as noted above, a reasonable jury could find that CARCO violated §1681i.

In addition, there is evidence from which a reasonable jury could find that CARCO's alleged noncompliance was willful.  When CARCO filed the amended report with SAIC, it was fully aware that Elsady had been laid off and was not discharged for performance reasons.  Yet despite that knowledge, it still included the original inaccurate report from RGBSI stating that he was terminated for performance reasons and still listed his employment status as adverse.  Based on this information, a reasonable jury could find that CARCO's actions were willful because it knowingly

12

submitted an inaccurate report with conscious disregard for Elsady's rights. See Roberts, 2007 WL 1308682, at *4. Therefore, CARCO is not entitled to summary judgment with respect to Count III on grounds that any noncompliance was not willful.

## 4. Damages

Finally, CARCO asserts that it is entitled to summary judgment with respect to the FCRA claims because Elsady cannot prove actual damages. Elsady asserts that SAIC's decision not to rehire him was based in part on a belief that the "circumstances upon which [Elsady] left a previous employment [were] suspect" and that it may have reinstated his offer if CARCO had filed a correct report earlier. As noted above, CARCO was not obligated under FCRA to complete its reinvestigation or submit an amended report until 30 days after it received notice of Elsady's dispute. Therefore, Elsady cannot claim that he was harmed by CARCO's failure to respond more rapidly.

Within 24 hours after Elsady first disputed the information in CARCO's report, RGBSI contacted SAIC, CARCO, and Elsady and confirmed that the report was inaccurate. At that point, SAIC knew that Elsady had not been terminated for performance based reasons. Despite the fact that SAIC possessed corrected information, it decided on December 2, 2008 that it would not reinstate Elsady's offer of employment. SAIC made the decision not to hire Elsady twelve days after the inaccurate report was filed and at least eighteen days before CARCO was required by statute to complete its reinvestigation.

While it is true that SAIC's decision not to hire Elsady was based at least in part on the initial inaccurate report issued by CARCO, the Court has found that CARCO did not violate the FCRA with respect to the initial report. Only the amended report can

form a basis for liability. Elsady has produced no evidence suggesting that SAIC would have reversed its December 2, 2008 decision and reinstated Elsady's offer if CARCO's subsequent amended report had been correct. Furthermore, Elsady has produced no evidence that he suffered any actual damages other than his inability to secure employment with SAIC. Actual damages can included non-economic damages such as damage to a plaintiff's name, anguish, and humiliation. See Bryant, 689 F.2d at 79. While Elsady's complaint alleged such harm, he has provided no evidence to support these assertions.

Because there is no evidence suggesting that Elsady suffered actual damages as a result of CARCO's alleged violation of the FCRA, he cannot prevail under a theory of negligent noncompliance. Therefore CARCO is entitled to summary judgment with respect to Count IV. However, a plaintiff need not establish actual damages to prevail on a claim of willful noncompliance. Therefore, CARCO is not entitled to summary judgment with respect to Count III.

## V. State Law Defamation Claims

### A. The Law

#### 1. Preemption

While the FCRA does not completely bar state law defamation claims, it does provide a heightened standard:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed

> pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or wilful intent to injure such consumer.

15 U.S.C. § 1681h(e).

### 2. State Law Defamation

To prevail on a defamation claim under Michigan law, a plaintiff must prove the following elements:

> 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm, or the existence of special harm caused by publication.

Locricchio v. Evening News Ass'n, 438 Mich. 84, 115-16 (1991).

A statement is privileged if it (1) was made in good faith, (2) was related to an interest to be upheld, (3) was a statement limited in scope to its purpose, (4) was made at a proper occasion, (5) was published in a proper manner and to proper parties only. Prysak v. R.L. Polk, 193 Mich. App. 1, 15 (1992). However, a plaintiff may overcome a claim of privilege by showing that a statement was made with actual malice or reckless disregard for the truth. Id.

A plaintiff need not prove special harm when a defamatory statements constitutes defamation per se. One example of defamation per se occurs "where the words spoken (written) are false and malicious and are injurious to a person in his or her profession or employment." Swenson-Davis v. Martel, 135 Mich. App. 632, 636 (1984). A statement is made maliciously when it is made with "knowledge of the statement's falsity or reckless

15

disregard for its truth or falsity." Dienes v. Associated Newspapers, Inc., 137 Mich. App. 272, 277 (1984) (citing New York Times v. Sullivan, 376 U.S. 254 (1964)).

## B. Analysis

### 1. Preemption

CARCO first asserts that Elsady's defamation claims are preempted by the FCRA because it did not act with malice or willful intent when it initially published the inaccurate report to SAIC. Elsady has produced no evidence suggesting that CARCO's initial publication of false information in the initial report was willful. However, as described above, a reasonable jury could find that CARCO's republication of the inaccurate information in the amended report was willful. Therefore, Elsady's defamation claims are not preempted with respect to the December 15, 2008 republication.

### 2. State Law Defamation

Elsady alleges that CARCO is liable for business defamation and libelous defamation.[4] CARCO also asserts that Elsady cannot prevail on a claim his defamation claims because its communications to SAIC were privileged. CARCO's analysis is directed exclusively toward its initial publication. However, CARCO could also be found liable with respect to its republication of the inaccurate information in the December 15, 2008 amended report. Because the December 15, 2008 publication was made after CARCO had knowledge that some information included in the report was false, it cannot prevail on a privilege-based defense. See Prysak, 193 Mich. App. at 15.

---

[4]Although Elsady has alleged both business defamation and libelous defamation, the parties do not distinguish between the two counts in their arguments with respect to this motion. For purposes of this motion, the Court will consider the two claims together under Michigan law for defamation.

CARCO is not entitled to summary judgment with respect to Elsady's defamation claims because Elsady has provided sufficient evidence to create a genuine issue of material fact with respect to each element of the defamation claim. First, there is no dispute that the December 15, 2008 report contained false information. Whether the report, taken as a whole is false must be decided by a jury. Second, as stated above, CARCO cannot claim privilege because it knew that the information it submitted was false. Third, as described above, Elsady has submitted sufficient evidence from which a jury could find that CARCO's actions were willful. Finally, Elsady is not required to show special harm because the defamation was related to his profession or employment and CARCO made the defamatory statements with knowledge of their falsity. Therefore, CARCO is not entitled to summary judgment with respect to Elsady's claims of defamation.

## VI. Conclusion

For the reasons stated above, the CARCO's motion is DENIED with respect to Counts I, II, and III and GRANTED with respect to Count IV.

SO ORDERED.


Dated: February 26, 2010     S/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 26, 2010, by electronic and/or ordinary mail.


                                                  S/Julie Owens
                                                  Case Manager, (313) 234-5160