UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WALID ELSADY,

     Plaintiff,

                                      Case No. 09-11659

-vs-                                  Hon: AVERN COHN

RAPID GLOBAL BUSINESS SOLUTIONS,
 INC., a Domestic Profit Corporation, and
CARCO GROUP, INC., a Foreign Profit
Corporation, jointly and severally,

     Defendants.
_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT RAPID GLOBAL
BUSINESS SOLUTIONS' MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

     This is a Fair Credit Reporting Act (FCRA) case under 15 U.S.C. § 1681 <u>et seq.</u>

Plaintiff Walid Elsady (Elsady) secured an offer of employment from non-party SAIC,

Inc. (SAIC) which was contingent upon employment and education screening.  SAIC

retained defendant CARCO Group Inc. (CARCO) to conduct the background screening.

Defendant Rapid Global Business Solutions, Inc. (RGBSI), a former employer, was

contacted by CARCO.  RGBSI erroneously reported to CARCO that Elsady had been

terminated for performance reasons; this information was relayed to SAIC.  After

receiving the information, SAIC rescinded Elsady's employment offer.  Elsady claims

that RGBSI and CARCO violated the FCRA as well as state law by providing and failing

to correct the erroneous employment information.  His Second Amended Complaint is in

four counts:

    (I)      Business Defamation as to RGBSI and CARCO,

    (II)     Libelous Defamation as to RGBSI and CARCO,[1]

    (III)    Willful Violation of the Fair Credit Reporting Act as to RGBSI and CARCO, and

    (IV)   Negligent Violation of the Fair Credit Reporting Act as to RGBSI and CARCO.

Now before the Court is RGBSI's motion for summary judgment on grounds that it complied with the FCRA by correcting the inaccurate information after receiving notice from CARCO that Elsady was disputing the report. For the reasons that follow, RGBSI's motion will be granted.

## II. FACTS

### A. Background

On February 25, 2008 RGBSI offered Elsady employment as a manufacture control engineer. He completed his first assignment in a satisfactory manner on June 26, 2008. On August 8, 2008 he was laid off. His termination was not performance related and he was eligible for rehire.

On November 7, 2008 SAIC offered Elsady employment as an electrical engineer. The offer was contingent on a satisfactory screening of his education and

---

[1]In a previous order, the Court dismissed Elsady's claims of Business Defamation and Libelous Defamation against RGBSI after finding that they were preempted by 15 U.S.C. § 1681t(b)(1)(F) (Doc. 30). Elsady's second amended complaint repeated verbatim the previously dismissed defamation counts. Because he has provided no reason for reasserting these claims, they will be dismissed again with prejudice.

employment history.  SAIC retained CARCO to perform the background screening.

SAIC required CARCO to report an "adverse" outcome if (1) there was a discrepancy between the employer and employee's reasons for separation, (2) the employee was terminated, or (3) the employee was ineligible for rehire.

On November 13, 2008 CARCO contacted RGBSI to verify Elsady's employment history.  CARCO sent RGBSI a release form and information form via fax.  RGBSI returned the completed information form which was signed and dated by Jennifer Emory (Emory), a Human Resources assistant, on November 17, 2008.  The information form incorrectly stated that Elsady was terminated due to job performance, was not eligible for rehire, and that his overall evaluation was "fair." CARCO reported this inaccurate information to SAIC along with an "adverse" finding.  SAIC determined that Elsady had falsified his employment records and rescinded his employment offer.

## B. RGBSI's Correspondence with Elsady and SAIC

After learning that SAIC had received inaccurate information about his employment history, Elsady contacted RGBSI directly on November 19, 2008.  He demanded that RGBSI immediately retract and correct the information provided to CARCO and also contact SAIC directly to correct the error.  Specifically, Elsady stated "Please indicate that I was not discharged due to a poor work performance" and "I have been trying to gain employment with [RGBSI] as well as other permanent and contract position [sic]."  RGBSI responded by forwarding Elsady's e-mail message to SAIC with a notation stating "The information below is accurate."

Elsady was unsatisfied with RGBSI's response to his email. He sent RGBSI

another email on November 20, 2008 demanding a more formal response:

> The response to my email and discussion with you yesterday
> regarding my Status is unacceptable in this format. I require
> both and [sic] email and a written official document stating
> my correct status and that your mistake has been corrected
> to refelect [sic] that I was laid-off from your company and
> that I was not discharged for any reasons [sic]. This must be
> clear and understandable written as an official letter from
> your companies [sic] management and signed for
> authorization. I do not wish to have this concern again in the
> future about this issue.

RGBSI responded on November 20, 2008 by sending the following letter to

SAIC:

> Walid Elsady was employed with Rapid Global
> Business Solutions, Inc. from 3/10/08 to 6/26/08 and 8/04/08
> to 8/08/08 as an Engineer
> Mr. Elsady completed his first assignment
> successfully on 08/04/08[2] and was offered another
> assignment. At that time it was understood that some
> requirements did not match Mr. Elsady's background and
> that was acceptable. Mr. Elsady was laid-off on 8/08/08. He
> was not discharged due to a poor work performance.

Elsady responded to RGBSI in a December 4, 2008 e-mail stating that he was

unsatisfied with the letter that RGBSI sent to SAIC. In addition to asking RGBSI to

correct the erroneous completion date, he requested other substantive changes to the

letter. He said:

> I would like for your company to eliminate the statement at the
> end of the letter stating: "He was not discharged due to a poor
> work performance" and replace this sentence with: "Mr.
> Elsady's overall performance is in good standing and he is
> eligible for rehire for future work opportunities with RGBSI."

---

[2]Elsady completed his first assignment on June 26, 2008.

4

> Please correct this and reply back to me via email and regular
> mail with this correction.

RGBSI responded to Elsady's e-mail by preparing a new letter which corrected the date of the completion of Elsady's first project and deleted the following sentence: "He was not discharged due to a poor work performance." That sentence was replaced with the following sentence: "He is eligible for future work opportunities with Rapid Global Business Solutions, Inc." Elsady asserts that there is no proof that this letter was sent to or received by CARCO or SAIC. However, Elsady sent an e-mail to SAIC on December 9 which stated: "I am sending you a copy of a recent email from RGBSI indicating my status with them as eligible for rehire. I have submitted and forwarded all of this information to . . . CARCO."

Despite Elsady's dissatisfaction with RGBSI's responses, SAIC did acknowledge that the employment report had been corrected. On November 20, SAIC acknowledged that Elsady was eligible for rehire and that there had been a "mix up" at RGBSI. On November 24, 2008 SAIC acknowledged that Elsady's employment history had been corrected and was no longer adverse. However, SAIC reevaluated Elsady's employment history and decided not to reextend his offer of employment for reasons unrelated to RGBSI's erroneous report.

### C. RGBSI and Elsady's Correspondence with CARCO

After Elsady informed RGBSI of the inaccurate report, Ivona Paluchowski (Paluchowski), an Account Manager at RGBSI, contacted CARCO, advised it that RGBSI had provided incorrect information regarding Elsady, and asked for instructions on how to correct the mistake. Paluchowski testified that CARCO instructed her to

make the necessary changes on the original form and then fax it back to them. However, Bruce Berger (Berger), CARCO's Vice President, testified that CARCO had no policy against issuing a new form when an employer needed to correct inaccurate information. On November 19, 2008 RGBSI faxed a corrected form to CARCO after using white-out to make the following corrections:

- Changing the reason for Elsady's termination to "Lay-Off,"

- Whiting out the statement that Elsady was not eligible for rehire, so that the form made no statement with respect to his eligibility for rehire, and

- Whiting out the statement that Elsady's work performance was fair, so that the form made no statement with respect to his work performance.

Nothing on the form indicated that it was an updated or corrected form. The signature and date were not changed. CARCO attached the corrected form to Elsady's electronic file.

On December 3, 2008 Elsady wrote to CARCO and requested that it correct his employment information. However, CARCO did not receive it until December 12, 2008. The letter stated in part:

> [Y]ou have sent to me a letter on November 17, 2008 notifying me and providing me with a copy of your investigative reporting based on this reporting which indicated some incorrect information from my previous employer that has since been corrected. . . .
> I have waited patiently for a response from SAIC Corporate Human Resources on correcting this reporting error. I have provided all information to Corporate Human Resources on behalf of any discrepancies that may have existed due to any circumstances. The situation has been corrected and I am writing this letter to ask for your assistance in resolving your inaccurate reporting on my behalf and rights under The Fair Credit Reporting ACT.

> Enclosed is a copy of a letter from my previous employer. Please contact me . . . to correct any further errors on your part.

CARCO's records show that a telephone call took place between a CARCO representative and Emery on December 15, 2008. The record states:

> Corrected Report – RGBSI – Information for the above company was inadvertently released as adverse due to subject's eligibility for rehire. Jennifer Emery, Human Resource Assistant, verified the subject was employed from March 10, 2008 as an engineer. Source verified the subject's salary . . . . Source further stated reason for leaving was laid off. However, unable to verify the reason per company policy. No further information is available. This employment is now clear.

When asked during her deposition, Emery was unable to recall the phone call or whether it took place.

On January 27, 2009 CARCO wrote to RGBSI, confirming that it had received an initial "verification document" from RGBSI on November 17, 2008 as well as a "subsequent document." The letter also stated:

> Mr. Elsady has submitted a formal dispute of the subsequent consumer report we completed as a result of the information submitted by your company. Under the Fair Credit Reporting Act ("FCRA" – 15 U.S.C. § 1681 *et seq.*) CARCO is required to inform you of the fact that Mr. Elsady is disputing the information originally obtained from your company. . . .
> Please review the attached documents and provide me a confirmation of the correct information representing Mr. Elsady's employment with your company. . . . Should there be any additional pieces of information which you may be able to provide which would provide clarity to the variances between the two verifications it would be most appreciated.

RGBSI responded on January 28, 2009 by sending the following fax:

> Walid Elsady was employed with Rapid Global Business
> Solutions, Inc. from 3/10/08 to 6/26/08 and 8/04/08 to
> 8/08/08 as an Engineer
> Mr. Elsady completed his first assignment
> successfully on 08/04/08 and was offered another
> assignment.  At that time it was understood that some
> requirements did not match Mr. Elsady's background and
> that was acceptable.  Mr. Elsady was laid-off on 8/08/08.  He
> was not discharged due to a poor work performance.

This is the same letter that was sent to SAIC and Elsady on November 20, 2008.

Elsady asserts that this letter is inadequate because (1) it contains the same inaccurate

and unacceptable information as the November 20, 2008 letter and (2) RGBSI

employees Sheenoo Sekhon (Sekhon) and Bati Devi (Devi) suggested that the letter

was prepared by Sekhon and that Devi's signature may not have been physically signed

by her.

CARCO faxed an updated research report to SAIC which stated that Elsady's

employment history was "clear."  It sent a copy of this report to Elsady along with a letter

stating that CARCO had complied with its investigatory duties under the FCRA and that

Elsady's employment status had been listed as "clear" since December 15, 2008.

### D. Procedural History

Elsady filed this action on March 20, 2009 in Wayne County Circuit Court; it was

removed on May 1, 2009.  On November 10, 2009 RGBSI filed a motion to dismiss,

asserting that Elsady's claims against it were barred by statute, improperly plead, and

preempted (Doc. 17).  On February 26, 2010 the Court granted RGBSI's motion, but

permitted Elsady to file an amended complaint with respect to his FCRA claims (Doc.

30).  Elsady filed an amended complaint on March 8, 2010 (Doc. 34) and a second

amended complaint on March 28, 2010 (Doc. 38).  RGBSI filed this motion for summary

8

judgment as its first responsive pleading to the second amended complaint.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV. DISCUSSION

### A. The Law

#### 1. Introduction

The FCRA is intended to regulate the field of consumer reporting and protect individuals who are the subject of such reports. The statute was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to confidentiality,

accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). The FCRA regulates three primary groups: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies.[3] E.g., Ruggerio v. Kavlich, 411 F. Supp.2d 734, 736 (N.D. Ohio 2005). Under the act, a "consumer reporting agency may furnish a consumer report" to "a person which it has reason to believe – intends to use the information for employment purposes." 15 U.S.C. § 1681b(a)(3)(b).

### 2. Furnishers of Information

### a.

The primary duties of furnishers of information are described in 15 U.S.C. § 1681s-2(a) which prohibits a furnisher from providing information if it "knows or has reasonable cause to believe that the information is inaccurate" or if the consumer notifies the furnisher that specific information is inaccurate. However, there is no private cause of action if a furnisher fails to comply with the requirements described above. 15 U.S.C. § 1681s-2(c)(1) (limiting enforcement to government agencies).

### b.

A furnisher of information is subject to additional requirements after a consumer reporting agency notifies it that a consumer disputes the information that it provided. In such situations, the furnisher must (1) conduct an investigation, (2) review any information provided by the consumer reporting agency, (3) report the results of the investigation to the consumer reporting agency, (4) report any inaccuracies to all

---

[3] The parties agree that CARCO is a consumer reporting agency, SAIC is a user of consumer reports, and RGBSI is a furnisher for purposes of the FCRA.

consumer reporting agencies which may have received the inaccurate information, and (5) correct any inaccuracies in the information it provides.  15 U.S.C. § 1681s-2(b).  However, these additional obligations do not arise until a furnisher of information has received notification from a consumer reporting agency.  15 U.S.C. §§ 1681i(a)(2), 1681s-2(b)(1).  These obligations do not arise when a furnisher of information is contacted directly by a consumer.  <u>Misialowski v. DTE Energy Co.</u>, No. 07-14452, 2008 WL 2998948, at *3, (E.D. Mich. Aug. 1, 2008) ("[T]he duties under [15 U.S.C. § 1681s-2(b)] are triggered only by notice from a consumer reporting agency; notice from the consumer is insufficient.") (citing <u>Downs v. Clayton Homes, Inc.</u>, 88 Fed. App'x 851, 853 (6th Cir. 2004)).  Once proper notification is received, a furnisher must comply with these requirements within 30 days.  15 U.S.C. §§ 1681i(a)(1), 1681s-2(b)(2).  When a furnisher fails to comply with the requirements of this subsection, a consumer can maintain a private cause of action alleging willful or negligent action on the part of the furnisher.  <u>See</u> 15 U.S.C. § 1681s-2(c)(2).

**c.**

If, after conducting an investigation, a furnisher concludes that it has reported information that is "inaccurate or incomplete or cannot be verified" it must promptly correct the information by:

(I)    modify[ing] that item of information;
(ii)   delet[ing] that item of information; or
(iii)  permanently block[ing] the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(E).  Based on the statutory test, a furnisher may comply with the FCRA in three different ways: by modifying, deleting, or blocking the reporting of the

inaccurate information.  But regardless of the method selected, the furnisher must

ensure that the report has been corrected and is no longer inaccurate.  However, there

is some disagreement as to what is required to show that a report is accurate.

Several courts, including the Sixth Circuit have held that a report is accurate for the

purposes of the FCRA so long as it is technically accurate, or accurate on its face.  See,

e.g., Dickens v. Trans Union Corp., 18 Fed. App'x 315, 318 (6th Cir. 2001); Cahlin v.

General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991); Garratt v.

Trans Union, No. 04-CV-00582, 2006 WL 2850499, at *10 (S.D. Ohio Sept. 29, 2006).

In Dickens, the Sixth Circuit expressly affirmed the technical accuracy rule stated in

Cahlin:

> [A] plaintiff has failed to carry his initial burden if a court finds
> that the information contained in a challenged credit report
> was accurate on its face, or put somewhat differently,
> "technically accurate" That is, a credit reporting agency
> satisfies its duty under section 607(b) if it produces a report
> that contains factually correct information about a consumer
> that might nonetheless be misleading or incomplete in come
> respect.

Dickens, 18 Fed. App'x at 318 (quoting Cahlin, 936 F.2d at 1156).  Under this approach,

a credit or employment report must be considered accurate so long as all of the

information it contains is accurate.  It is irrelevant whether additional information is

omitted which results in a report that is misleading to a reader of the report.  While

Dickens applies directly to consumer reporting agencies rather than furnishers, there is

no reason to define accuracy differently for consumer reporting agencies and furnishers.

The purpose of FCRA is to protect consumers by ensuring accurate reporting of

information and the commitment to accuracy should apply equally to all entities involved in the reporting process.

Elsady cites a number of cases from other circuits which hold that incomplete or misleading reports can be considered inaccurate for purposes of the FCRA.  Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 415 (4th Cir. 2001) ("A report is inaccurate when it is "patently incorrect" or when it is 'misleading in such a way and to such an extent that it can be expected [to have] and adverse [ ]' effect." (alterations in original)); Saunders v. Branch Banking and Trust Company of Virginia, 526 F.3d 142 (4th Cir 2008); Sepulvado v. CSC Credit Services, 158 F.3d 890, 895 (5th Cir. 1998). The cases cited by Elsady involve the omission of critical information which made a report misleading.  Saunders, 526 F.3d at 146 (bank reported that plaintiff's loan was in repossession status but failed to report that the loan was disputed, resulting in a 155 point drop in plaintiff's credit score); Dalton, 257 F.3d at 412-13 (credit reporting agency reported that plaintiff had been charged with a felony and convicted of third degree assault, but omitted that third degree assault was a lesser offense that was classified as a misdemeanor).  In each case the omitted information was material because it resulted in a misunderstanding on the part of the recipient as well as an adverse action against the plaintiff.

However, other courts have found that a report is not misleading merely because some information is omitted.  Under this approach, a report is accurate so long as the recipients are not actually mislead, even if the consumer would prefer that an incident be reported in a different fashion.  In Sepulvado, a creditor listed a debt of $12,333 with an "open date" of March 1994 and stated that it had been "assigned to CSC/TCCP" in

March 1994.  Sepulvado, 158 F.3d at 893.  The plaintiff asserted that the report was inaccurate because it omitted the fact that the debt arose from a foreclosure deficiency in 1988.  Id. at 894.  However, the court found that, despite omitting the origin of the debt, the report was not misleading because the use of the term "assigned" would have put a creditor on notice that the obligation existed before the open date.  Id. at 896.

Likewise, in Dickens the plaintiff objected to a credit report that included a reference his daughter's bankruptcy in which she included a car loan which he had cosigned.  Dickens, 18 Fed. App'x at 316.  The Sixth Circuit found that the report was not misleading, even though it failed to state that it was his daughter who had filed for bankruptcy and that the car loan was eventually paid off in full.  Id. at 318.  The court noted:

> Although a lay person might not have understood the terminology used by Trans Union in its credit report, there is no question that Bank One understood Dicken's role in the bankruptcy proceeding.  Thus, Dickens's mere speculation that the notation was misleading, without more, is insufficient as a matter of law to establish a prima facie case of inaccuracy.

Id.  Thus a plaintiff's mere assertion that a report was misleading, or even his proof the a lay person would be mislead, is insufficient to establish that a report was misleading and, therefore, inaccurate.  At a minimum, a plaintiff must prove that a creditor or consumer of credit reports would be mislead.  When the recipient was not mislead, such a showing will be extremely difficult.

Although the Sixth Circuit has previously adopted a technical accuracy requirement for accuracy under the FCRA in Dickens, that case is not binding.  Moreover, it involved a consumer reporting agency rather than a furnisher.  While some ambiguity exists with

respect to the proper test for inaccuracy under the FCRA, the Court need not resolve it at this time because Elsady's claim fails under either test.

### 3. Civil Liability for Noncompliance with the FCRA

Consumer reporting agencies and furnishers are subject to civil liability if they violates the FCRA. If the noncompliance is willful, a consumer reporting agency (or furnisher) is liable for any actual damages, or in the absence of actual damages for statutory damages. 15 U.S.C. § 1681n(a)(1)(A); Ramirez v. Midwest Airlines, Inc., 537 F. Supp. 2d 1161, 1168 (D. Kan. 2008) ("In light of the fact that the word 'actual' damages is notably absent from the statutory damages provision, it is clear that a showing of actual damages is not required to recovery statutory damages."). A plaintiff who establishes a willful violation can also recover punitive damages, costs, and attorneys fees. Id. 1861n(a)(1)(B)-(c). "To show willful noncompliance with the FCRA, the plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." Roberts, 2007 WL 1308682, at *4 (citing Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1999)).

If the noncompliance is merely negligent, a consumer reporting agency is only liable if the plaintiff can prove actual damages. 15 U.S.C. § 1681o(a)(1) ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable in an amount equal to the sum of – (1) actual damages sustained by the consumer as a result of the failure."). Unlike the provision for willful noncompliance, a plaintiff alleging negligent noncompliance cannot rely on statutory damages as an alternative to actual damages.

## B. Analysis

### 1. Technical Accuracy

RGBSI claims that it is entitled to summary judgment because, after receiving notice from Elsady that its initial report was incorrect, it corrected the inaccuracies and only reported correct information after that.  Specifically, RGBSI made the following corrections pursuant to 15 U.S.C. 1681s-2(b)(1)(E):

- it modified the reason for Elsady's discharge to "Lay-Off,"

- it deleted the prior statement that Elsady was not eligible for rehire, and

- it deleted the prior statement that Elsady's work performance was fair.

Once these changes were made on November 19, 2008, the report sent to CARCO no longer contained any inaccuracies.[4]  RGBSI says that it is entitled to summary judgment because there was no inaccuracy in its report when CARCO provided notification of Elsady's dispute.  Further it says that even if the report were considered inaccurate, it complied with the FCRA by modifying or deleting all of the incorrect information.

RGBSI's corrections did comply with the letter of the FCRA.  All inaccurate information was either deleted or modified.  Because RGBSI made these changes before receiving notification from CARCO, the report was technically correct when notification was provided.[5]  Because all inaccuracies had been corrected, RGBSI was

---

[4]Although subsequent reports indicated that Elsady did not complete his first assignment until August 4 when he had in fact completed it in June, this is not a substantive inaccuracy and Elsady has not suggested that it forms a basis for liability under the FCRA.

[5]Because RGBSI corrected the information form on November 19, 2008 it makes no difference whether the notification date is December 15 or January 27.  In either case, the corrections preceded the notification.

16

no longer under an obligation to correct the report after receiving notice. Moreover, Elsady has failed to identify a single " technically inaccurate" statement made by RGBSI after he initially contacted it to report the inaccurate information in the original report. Thus, Elsady has failed to raise a genuine issue of material fact with respect to the technical accuracy of RGBSI's reinvestigation reports.

## 2. Lack of Misrepresentation

Even if the Court were to follow the Fourth and Fifth Circuits lead and consider a report from a furnisher to be inaccurate if it was misleading, the record in this case – including documents filed with respect to CARCO's motion for summary judgment – establishes that RGBSI's corrections were not misleading. When SAIC hired CARCO to conduct a background check on Elsady, it provided a number of criteria on which to base the check. Specifically, CARCO was required to report an "adverse" finding if there was a discrepancy between RGBSI and Elsady's reasons for separation, Elsady was terminated, or Elsady was ineligible for rehire.

First, there is clear evidence that SAIC understood RGBSI's correspondence to correct any "adverse" findings in the initial report that was submitted by CARCO. In a November 20, 2008 letter, Glenn Alliano, an SAIC recruiter, described a conversion with Paluchowski.[6] He stated that Elsady had been laid off because RGBSI's needs had changed and he was not a good fit. He also stated:

> They are trying to work on other opportunities and they have
> been staying in touch. Because of the lack of work they
> haven't been able to place him at this time. They weren't
> sure what happened on the CARCO reports, but
> [Paluchowski] believes it was an HR Assistant and there was

---
[6]CARCO's Motion for Summary Judgment, Ex. 10 (Doc. 17-12).

a mix up.

In a series of e-mails sent on November 24, 2008 SAIC employees discussed Elsady's pending application and expressed concern over the way that his application had been handled.[7] Alliano said "Elsady has been very pro-active in correcting the error on the Carco report and I'd like to give him an update ASAP." Valerie Kane (Kane) responded saying "I have to tell you that I am not happy with the way that this turned out. We offered Walid a position, then rescinded based on application information that was eventually corrected." In another e-mail Kane stated:

> My concern is the fact that we made him an offer. The offer was rescinded based on information in his application – and for no other reason. Walid took the initiative to track down and correct the information and provide it back to use within one day. Now we have to go back to him and tell him that the offer will not be reinitiated for reasons other than the original reasons given.

While not explicitly addressing each inaccuracy in RGBSI's initial report, SAIC employees demonstrated that they were satisfied that all of the incorrect information provided by RGBSI via CARCO had been corrected and that Elsady's employment history was clear. At a minimum, they understood that he was not terminated and that he was eligible for rehire. By implicitly stating that Elsady had passed the background screening based on the corrected information, SAIC established that they were not mislead by RGBSI's corrected reports.

Second, there is clear evidence that RGBSI's correspondence with CARCO was interpreted as correcting any "adverse" findings in the initial report. CARCO provided records of a December 15 call with Emery regarding errors in RGBSI's report and

[7]CARCO's Motion for Summary Judgment, Ex. 14 (Doc. 17-16).

concluded that "The employment is now clear." Further, after receiving RGBSI's January 28, 2010 response, CARCO issued an updated report to SAIC which listed Elsady's employment with RGBSI as clear. It also wrote a letter to Elsady stating that his employment had been clear since December 15, 2008. Again, by stating that Elsady's employment was clear, CARCO understood that he had not been terminated and was eligible for rehire.

Although Elsady asserts that the various reports and corrections issued by RGBSI were misleading, there is no support for this assertion in the record. Both CARCO and SAIC understood that Elsady's employment was clear, that he had been laid off, that he was not terminated, and that he was eligible for rehire. Even if RGBSI's reports could have mislead a lay person, they were clear and did not mislead those involved in the hiring and employment process. This is sufficient to establish that the corrected reports were not misleading. See Dickens, 18 Fed. App'x at 318.

At most, the FCRA provides consumers with a right to reports that are accurate and not misleading. It does not give consumers a right to edit and dictate the terms of reports before they are sent. Elsady's demand that RGBSI submit a report stating that he "was 1) laid off; 2) for reasons not related to performance; 3) is eligible for rehire; and 4) that his performance was anything other than fair or poor" falls into the latter category. Even without the edits and alterations that Elsady demanded, CARCO and SAIC received RGBSI's corrections and understood that Elsady's employment with RGBSI did not indicate any potential problems. This is the extent of his entitlement under the FCRA.

Because Elsady has failed to create a genuine issue of material fact with respect to the technical accuracy or misleading nature of the corrected reports issued by RGBSI, it is entitled to summary judgment with respect to Elsady's claims of willful and negligent violation of the FCRA.

### 3. Damages

RGBSI asserts that it is entitled to summary judgment even if it violated the FCRA because Elsady cannot prove that he suffered any damages. As described above, proof of damages is not essential to a claim of willful violation under 15 U.S.C. § 1681n. However, proof of damages is essential to a negligence-based claim under 15 U.S.C. § 1681o.

RGBSI would also be entitled to summary judgment on Count IV under this theory because Elsady has not demonstrated a genuine issue of material fact with respect to actual damages. First, RGBSI's duties under the FCRA did not arise until at least December 15, 2008 when CARCO first contacted it with respect to Elsady's dispute.[8] However, the record establishes that prior to that date SAIC was in possession of the corrected information and subsequently decided not to re-extend an offer of employment to Elsady due to other criteria unrelated to RGBSI's reporting. Thus there is no direct evidence that Elsady suffered any loss that can be attributed to RGBSI. In addition, Elsady has failed to meet his burden under FED. R. CIV. P. 56(c) because his response to RGBSI's motion for summary judgment makes no assertion of actual damages. Instead Elsady merely argues that he is entitled to punitive damages

---

[8]The court expresses no opinion on whether or not the notice provided in the December 15, 2008 phone call is sufficient under the FCRA to trigger RGBSI's duty to investigate.

because RGBSI's violation was willful.  Therefore Elsady has failed to create a genuine issue of material fact with respect to actual damages and RGBSI is entitled to summary judgment with respect to his negligence-based claim under the FCRA.

## V. CONCLUSION

For the reasons stated above, RGBSI's motion for summary judgment is GRANTED and RGBSI is DISMISSED as a defendant.  The case goes forward against defendant CARCO.

SO ORDERED.


  S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  July 12, 2010


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 12, 2010, by electronic and/or ordinary mail.


  S/Julie Owens
Case Manager, (313) 234-5160